## NORTHERN PAC. RY. CO. v. WAGNER.

### No. 7876.

Circuit Court of Appeals, Ninth Circuit.

Oct. 22, 1936.

Frederic D. McCarthy, of St. Paul, Minn., Johnston, Coleman & Jameson, of Billings, Mont., and Gunn, Rasch & Hall, of Helena, Mont., for appellant.

Thomas C. Colton, of Wibaux, Mont., and H. Lowndes Maury, of Butte, Mont., for appellee.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment entered upon a verdict in favor of plaintiff, a citizen of Montana, in an action brought against the railroad company, a corporation of Wisconsin, for damages sustained in a flood engulfing the town of Wibaux, Mont., on June 7, 1929. The appeal is based upon assigned errors in refusing to direct a verdict for defendant, denying a motion for new trial, and in rejecting certain evidence offered by the defendant.

Beaver creek, in Eastern Montana, flows in a northerly direction through the town of Wibaux. On the north side of the town, the company's railroad runs east and west upon an embankment. Where it crosses the creek, it was supported, at the time of the flood, by a concrete bridge 15 to 20 feet in height above the bed of the creek. The central span of the bridge was about 65 feet wide at the bottom and 100 feet at the top. In addition there was on either side of the central span a 20-foot approach span. These latter, however, were filled in before the time of the flood and allowed no egress to surplus water in the creek. In addition to the space under the bridge, there was a small "viaduct" or opening in the embankment some distance from the bridge which was used as a passageway for children in normal times, and acted as a spillway in periods of high water.

Beaver creek drains a hilly region of 342 square miles south of Wibaux. It is arid country, and the stream is ordinarily shallow and but a few feet in width. The country is subject to occasional cloudbursts, however, at which times the river swells to many times its normal dimensions.

In the early hours of June 7, 1929, a series of cloudbursts struck the valley. The creek became rapidly engorged and by 10 o'clock a. m. had flooded the town of Wibaux, which stands upon ground approximately 15 feet above the center of the channel. Part of the town was

flooded to a depth of 5 feet or more. At 10 o'clock in the morning the company's embankment was washed out.

Plaintiff maintained a clothing store which was flooded to a depth of 5 feet, with consequent damage and destruction to his stock of goods. He brought this action against the company alleging that the cause of the flooding was the company's negligent failure to provide a sufficient opening in its embankment to allow the flood waters to run down the creek to the north. He asked $15,000. The jury found in his favor and awarded him damages of $5,000.

The company's answer denied negligence, and set up affirmatively that the damage complained of was the result of an extraordinary and unprecedented flood; of proportions so great that the phenomenon might be classed as an "act of God," the occurrence of which the company could not reasonably have foreseen. It further alleged affirmatively that the successive bridges over the creek at the point in question, including the bridge in existence at the time of the flood, were designed and built by competent engineers with full knowledge of the rainfall and drainage conditions of Beaver creek and its environs.

At the close of all the evidence the company moved for directed verdict in its favor on the grounds that the plaintiff had failed to show negligence on the part of defendant, that the evidence affirmatively showed the contrary, and that defendant's negligence, if any there was, was not shown to have caused plaintiff's damage. It was further urged, in support of the motion, that the evidence showed in any case that some of the alleged damages would have occurred regardless of the company's bridge causing the water to back up into the town, and that plaintiff had failed to show to what extent his damage was occasioned by the presence of the company's bridge. The motion for new trial was based upon the same grounds, specifying in addition the admission of certain alleged incompetent testimony. This latter point, however, has not been urged in the company's brief.

In reviewing a denial of motion for directed verdict, we take as established all facts that plaintiff's evidence reasonably tends to prove. Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492. We believe there is substantial evidence justifying a finding by the jury that the company negligently failed to maintain an adequate opening in its embankment to permit the passage of high waters and that such negligent failure proximately caused the damage complained of.

The first matter to be considered is the duty of care owed by the company to persons in the position of the plaintiff. In Montana this is enjoined by statute. Revised Codes, § 6507 gives railway corporations the right to maintain embankments and bridges across waterways and provides that: "The corporation shall restore the stream or watercourse * * * to its former state of usefulness, as near as may be, or so that the railroad shall not unnecessarily impair its usefulness or injure its franchise."

This section has been held by the Supreme Court of Montana to impose upon railway companies maintaining bridges across streams a duty of ordinary care for the protection of life and property along the course of the stream. Heckaman v. Northern Pac. Ry. Co., 93 Mont. 363, 378, 379, 20 P.(2d) 258.

The duty established, it becomes necessary to consider whether the evidence justified a finding that the company's manner of maintaining its bridge caused the damage to plaintiff's property and, if it did, whether such damage was reasonably foreseeable by the company.

As to causation, there are sharply conflicting theories. Plaintiff maintains, and his evidence tends to show, that the flood waters came down the valley in a steady rising stream and were unable to flow through the bridge opening rapidly enough to prevent excessive backing up of the water and the consequent flooding of the town. The company's testimony, on the contrary, goes to prove that the waters rushed upon the town of Wibaux in a series of large waves or "walls of water"; that these recurring waves did the damage complained of and would have done so regardless of the presence or absence of the bridge.

There is sufficient evidence in the record to warrant the jury in accepting the first theory. There is testimony showing that the width of the full channel of Beaver creek in the vicinity of the embankment was 170 or 180 feet. Inasmuch as the two approach spans of the company's bridge had been filled up prior to

the flood, the center span opening left by the bridge was only 65 or 70 feet at the bottom, and 100 feet at the top. The narrowing of the channel is apparent. Several witnesses testified to the difference in the water levels above and below the bridge before the bridge went out, estimating it variously from 4 or 5 to 8 or 10 feet. There is evidence going to. show that, when the embankment gave way at 10 o'clock in the morning, the water level in the town dropped rapidly, whereas at the Massey farm, south of town, the waters did not noticeably recede until 3 o'clock in the afternoon.

Many witnesses who observed the progress of the flood testified that there were no "walls of water," that the rise of the water level was even. They testified to seeing objects moving slowly in the water in an easterly direction and there is even some proof showing that objects were floating south. Such testimony is not consistent with walls of water descending upon and carrying objects along the main course of the flood from south to north. It could indicate only that water was becoming impounded at the bridge and embankment, and swirling about in consequence.

We hold that there was sufficient evidence to support a finding that, had the company allowed reasonably full outlet to the stream at the point where its track crossed it, no water would have stood in plaintiff's store on the occasion in question.

▮ There remains to consider whether the defendant company was negligent in not anticipating and guarding against a flood of the proportions of the deluge giving rise to this suit. Here again the evidence is sharply conflicting, the question was for the jury, and we believe there was substantial evidence justifying their verdict on this score. The company affirmatively pleaded that its engineers in constructing the bridge were thoroughly familiar with rainfall and drainage conditions in the Beaver creek territory. It is undisputed that this region is frequently subject to torrential cloudbursts. Witnesses testified to floods at intervals from the nineteenth century on, particularly to a severe one in 1921 in which a portion of the town was submerged and some of the company's property damaged. It quite clearly appears that the flood of June 7, 1929, was much more serious in its con-

sequence to the town of Wibaux than any that had preceded it. On this occasion, apparently, a number of cloudbursts which ordinarily would occur at more widely separated points poured their waters at the same time into Beaver creek and its tributaries. But the mere fact that the flood was unprecedented in volume and extent does not relieve the defendant from liability. The Salton Sea Cases (C.C. A.9) 172 F. 792, 819. The region's susceptibility to deluges was known to the defendant. Whether it was chargeable with anticipation of a flood the volume of the one in question was an issue to be resolved by the jury. Such was the holding of the Supreme Court of Montana in a case arising against this defendant as a result of the same flood as the one now under consideration. Heckaman v. Northern Pac. Ry. Co., 93 Mont. 363, 382, 20 P.(2d) 258.

The defendant company complains that the jury did not segregate those of plaintiff's damages due to the backup of the water caused by the embankment from those which would have occurred in any case. There is no merit in this objection. The jury were instructed fully by the court on this point. There is sufficient evidence to warrant a conclusion that none of plaintiff's damage would have occurred had a proper opening been left in the embankment by the company. Furthermore, the record is replete with testimony, lay and expert, as to the extent and measurements of the flood at different points above and in the town of Wibaux. The jury was not without evidence upon which to make a reasonable segregation of damages had it cared to do so. The fact that it awarded plaintiff $5,000, when he claimed $15,000, indicates that it may have done so. No error is shown here.

▮ Defendant assigns as error the rejection of a report drawn up by United States government engineers upon a survey of flood conditions in Wibaux and vicinity made after the flood of 1929. The assignment of error not only fails to "quote the full substance of the evidence * * * rejected," as required by our rule 11, but it also fails to indicate in any manner of what such evidence consists or what it tends to prove. Hence we will not consider this assignment.

Affirmed.